Gloria Lee PARKER, Appellant,

v.

Ricky Allen PARKER, Appellee.

No. 01–85–0707–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 3, 1986.

Rehearing Denied Oct. 16, 1986.

Joe Warner Bell, Trinity, for appellant.

Cindy Maria Garner, Pemberton & Garner, Crocket, for appellee.

Before EVANS, C.J., and WARREN and DUGGAN, JJ.

## OPINION

EVANS, Chief Justice.

Gloria Lee Parker appeals from that part of the trial court's divorce decree appointing her former husband, Ricky Parker, managing conservator of their minor child.

During two days of trial, both parties and 18 witnesses testified. The testimony was conflicting and often indefinite. Both parties testified that the child was born three weeks after they were married, but that the appellee, Ricky Parker was the father of the child. Gloria Parker has a ninth grade education and, at the time of trial, was living in an apartment in Houston with a man she intended to marry. Ricky Parker had completed high school and was living in Groveton with a woman he also intended to marry. Gloria Parker had worked at four different jobs during the year preceding trial, and at the time of trial, was doing home health care work for $5.25 an hour. Ricky Parker had been working for the Texas Forestry Service for two years at the time of trial, earning a net income of $660 a month.

Witnesses for Ricky Parker portrayed Gloria Parker as a promiscuous woman who frequented clubs in and around Groveton. There was also testimony that she had relinquished custody of her daughter from the first marriage to the child's paternal grandparents. On the other hand, witnesses for Gloria Parker testified that Ricky Parker had a reputation for drinking and fighting, and that Gloria had a good relationship with her daughter and could

provide a stable environment for her in Houston.

The trial court made 40 findings of fact and 23 conclusions of law. Among other findings, the court found:

That Gloria Parker had ignored her child, and would send her outside or place her in the care of others, rather than supervise her.

That ignoring the child, created a danger to the child's emotional, mental, and physical health and well being.

That Gloria Parker was unable to provide a stable mental, emotional, and physical environment for her child.

That she held only a part-time job with a temporary nursing agency and was unable to financially provide for the child and could provide no stable home for the child.

The court also found:

That Ricky Parker had a good, fatherly relationship with the child, had supervised the scholastic achievements of the child, and that the child had made improvements in school while living with her father.

That Ricky Parker had a full-time job with the forestry service and in addition to his usual wages, was entitled to insurance benefits for himself and his dependents.

That Ricky Parker was financially able to provide for the child and to provide a stable, mental, emotional, and physical environment for the child.

In her first 12 points of error, Gloria Parker contends that the trial court erred in asserting jurisdiction over the child because the evidence shows that Ricky Parker was not the child's father.

■ In support of this position, Gloria Parker argues that because she was legally married to another person at the time of the child's conception, a rebuttable presumption exists that her then husband is the child's father. To sustain this contention, she refers to cases in which paternity was a contested issue, such as heirship, child support, and paternity suits.

The cases cited by Gloria Parker are not applicable to the facts of this case. Here, the father of the child does not deny paternity, and to the contrary, he asserts his parental rights. He testified unequivocally that he was the father of the child, and that fact is not a disputed issue in the case. We overrule the first 12 points of error, concluding that the evidence is sufficient to sustain the trial court's finding that appellee was the father of the child.

In points of error 13 through 27, Gloria Parker asserts that the trial court abused its discretion in appointing Ricky Parker the managing conservator of the child. Under these points, she argues that the trial court's findings were not supported by, or were contrary to, the evidence. We also overrule these points of error.

In making a custody award incident to a divorce decree, a trial court has wide latitude and its judgment will be reversed only where there is a clear showing of an abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449 (Tex.1982).

■ Here, there was testimony that Gloria Parker relinquished custody of her daughter by her prior marriage to the child's paternal grandparents in exchange for money. There was also testimony that she made the child, who is the subject of this proceeding, sit on a couch for hours as punishment and would inappropriately discipline the child for relatively innocent behavior. The child's kindergarten teacher testified that the child had made great progress during her year at school in Groveton, and that Ricky's mother and girlfriend had participated in school projects with the child.

The trial court was in the best position to evaluate the parties' respective personalities and their strengths and weaknesses in providing parental care for the child. *See Davis v. Duke*, 537 S.W.2d 519 (Tex.Civ. App.—Austin 1976, no writ). Although an attempt was made to introduce evidence showing that Ricky Parker had sexually abused his stepdaughter, that evidence was excluded and constituted no basis for the

trial court's determination. We find that the trial court's findings of fact and conclusions of law are supported by competent evidence and that the court did not abuse its discretion in appointing Ricky Parker managing conservator of the minor child. *Gillespie* at 451.

In her remaining three points of error, Gloria Parker contends that the trial court erred in overruling her motions for disqualification of an attorney who first represented Ricky Parker at trial. Her motions to disqualify were based on the fact that the attorney had previously represented her in an earlier custody dispute stemming from her prior divorce. Under these points, Gloria Parker argues that her former attorney violated the attorney-client privilege by undertaking to represent Ricky Parker, when he had earlier represented her. Although that attorney voluntarily withdrew from the case after the motions were filed, Gloria Parker argues, in effect, that the knowledge he gained through such representation gave him confidential information about the witnesses available to testify against her, violating the attorney-client privilege.

We overrule these points. There is no showing that any testimony was given as a result of prior communications between Gloria Parker and her former counsel, or that she was prejudiced in this trial in any manner by such former representation.

The trial court's judgment is affirmed.

### OPINION ON MOTION FOR REHEARING

Appellant, Gloria Parker, asserts in her motion for rehearing that our disposition of this case prohibits a woman from raising the issue of the paternity of a minor child in a custody dispute arising from a divorce proceeding. We do not so hold.

At trial, Ricky Parker testified that he was the father of the child, J. Parker, the subject of the custody dispute. Gloria Parker did not expressly deny Mr. Parker's paternity, either in her pleadings or at trial. Moreover, Mrs. Parker's testimony at trial was that she had 'one child with her first husband and one child with her second husband', Ricky Parker. The mere fact that the birth of J. Parker occurred three weeks after the Parkers' marriage and three months after the dissolution of Mrs. Parkers' first marriage raised no presumption regarding the paternity of the child, in light of Mrs. Parker's failure to offer any evidence at trial controverting the testimony that Ricky Parker was the child's father.

Among the trial court's findings of fact was the finding that the minor child, J. Parker, was a legitimate child of the marriage of Gloria Parker and Ricky Parker. The trial court's findings will not be disturbed in the absence of strong evidence to the contrary. *See Belford v. Belford,* 682 S.W.2d 675, 677 (Tex.App.—Austin 1985, no writ). We hold only that the evidence regarding paternity supported the trial court's finding that the parties were the parents of the minor child.

Appellant's motion for rehearing is overruled.